IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JUSTICE I. ALLAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:12-CV-255-WHA |
| | ) | [WO] |
| DR. GURLEY, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

\*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| JUSTICE I. ALLAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.:  2:12-CV-915-WHA |
| | ) | [WO] |
| QUALITY CORRECTIONAL | ) | |
| HEALTH CARE, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff challenges the medical care and treatment provided to him between January and February 2012, during his incarceration at the Montgomery County Detention Facility in Montgomery, Alabama.[1]  Specifically, Plaintiff complains  Defendants denied him adequate medical care and treatment which caused him

---

[1] Plaintiff's complaints were consolidated by order entered November 19, 2012. *Doc. No. 44*.

to suffer two strokes.  Plaintiff also complains that he was charged a co-pay for notifying the medical staff that he had suffered a stroke. Named as defendants are Quality Correctional Health Care, Inc., ["QCHC"], Nurse Callie Johnson, Dr. Jerry Gurley, and Dr. Johnny Bates. Civil Action No. 2:12-CV-255-WHA, *Doc. Nos. 5, 10*, Civil Action No. 2:12-CV-915-WHA, *Doc. No. 1*.[2]

In accordance with the orders of the court, Defendants filed answers, special reports, and supporting evidentiary material in response to the allegations contained in the complaints. The court then informed Plaintiff that Defendants' special reports, may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment.  Plaintiff filed a response to the special report filed by Defendants Gurley and Johnson.  This case is now pending on Defendants' motions for summary judgment.  Upon consideration of the motions, Plaintiff's opposition, and the supporting and opposing evidentiary materials, the court concludes that the motions for summary judgment filed by Defendants are due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

---

[2]In accordance with the prior opinions, orders, and proceedings of the court, all the claims presented in Plaintiff's original complaint filed in Civil Action No. 2:12-CV-255 were dismissed. *See Doc. Nos. 4, 8, 9*.  Plaintiff filed a pleading on April 4, 2012, which the court considered to contain a motion to amend the complaint. *Id. at Doc. No. 5*. The court granted the motion to amend solely as to Plaintiff's allegation of inadequate medical care and treatment against Defendants Gurley and Johnson. *See Id. at Doc. No. 8*. Plaintiff filed a subsequent amendment to the complaint on May 2, 2012. *Id. at Doc. No. 10*.

genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof.  *Id.* at 322-24.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to

---

[3] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. Consequently, to survive Defendants' properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 242). Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces

nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment").   Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).   What is material is determined by the substantive law applicable to the case.   *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").   "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).   To

demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations omitted). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary

judgment.

## II.  DISCUSSION

*A. Background*

Plaintiff was processed into the Montgomery County Detention Facility ["MCDF"] on January 21, 2012.  He informed intake correctional staff that he was an insulin dependent diabetic and also suffered from hypertension for which he previously had been prescribed Lisinopril (10 mg.) twice a day.  He claims he suffered a mild  stroke on February 18, 2012, and that from January 21, 2012, to February 18, 2012, he had not been given any insulin or medication for hypertension.  Civil Action No. 2:12-CV-255-WHA ["CA No. 12-255"], *Doc. No. 5* at 7.  In an amendment to the complaint, Plaintiff states, upon being processed into MCDF, he informed jail staff of the medication he was taking, that he suffered from hypertension, and that he had been without his medication for six days.  *Id. Doc. No. 10* at 3.  He claims the lapse in medication occurred because of his extradition from New Jersey to Alabama.  *Id*.  Prior to this transfer, Plaintiff had been incarcerated at the Union County Jail where he had been prescribed Clonidine (.1 mg.) and Lisinopril (10 mg.) twice a day for ten months.  *Id*.

In his complaint filed in Civil Action No. 2:12-CV-915-WHA ["CA No. 12-915"], Plaintiff asserts that  Dr. Bates prescribed him .1 mg. of Clonidine but prior to entering MCDF he had been prescribed Clonidine (.2 mg.) and Lisinopril (10 mg.). *Doc. No. 1* at 3. Plaintiff alleges that his request to be put on this same medication regimen was denied and

that Dr. Bates prescribed him insulin. *Id*. Plaintiff asserts, however, that he "is not an insulin dependent diabetic and never told Dr. Bates or any other medical personnel at MCDF that he was prescribed insulin. *Id*. Finally, Plaintiff claims that QCHC's policies and procedures allowed Drs. Bates and Gurley to place him in medical isolation for refusing insulin and faults the entity for failing to obtain his medical records from the jail in New Jersey. *Id*.

*B. Declaratory and/or Injunctive Relief*

Plaintiff is no longer incarcerated at the Montgomery County Detention Facility. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at the county detention facility, his request for declaratory and/or injunctive relief has been rendered moot.

*C. Immunity*

To the extent Defendants maintain they are entitled to sovereign immunity in their official capacities and/or qualified immunity in their individual capacities, the court notes that Alabama officials are immune from claims brought against them in their official capacities for monetary damages because the State is the real party in interest. *Lancaster v.*

*Monroe Cnty., Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997). QCHC, however, is a private corporation which contracts with MDCF to provide medical care and services to inmates in their custody, and Defendants Gurley, Johnson, and Bates are employees of QCHC. There being no indication that these defendants are state officials, they are not entitled to sovereign immunity.

Regarding the medical defendants' assertion that they believe they are entitled to qualified immunity, the Eleventh Circuit, relying upon the Supreme Court's reasoning in *Richardson v. McKnight*, 521 U.S. 399 (1997), which declined to extend qualified immunity to privately employed prison guards, held that qualified immunity may not be extended to privately employed prison personnel. *See Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999), *opinion amended by* 205 F.3d 1264 (11th Cir. 2000); *see also Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 837 (11th Cir. 2004) ("The parties agree that as a private entity, SHP[, a private corporation employed by the County to provide medical care to inmates at the county jail,] is not entitled to assert a qualified immunity defense."). Accordingly, the medicals defendants are not entitled to summary judgment on qualified immunity grounds.

*D. QCHC*

Plaintiff alleges that QCHC's policies and procedures allowed Dr. Bates and Dr. Gurley to place him in medical isolation for refusing to take insulin.[4] He further alleges that

---

[4]To the extent Plaintiff claims his placement in the infirmary for medical observation based on his failure to comply with medical orders occurred in the absence of due process, such claim is frivolous. The decision by medical professionals to place Plaintiff in the medical unit to monitor his health as a result of his non-compliance with physician orders and prescribed medication was not punitive, but rather, done in

despite signing a medical release form authorizing QCHC to obtain his medical records from the Union County Jail, the form was never sent. Failure to obtain his previous medical records, Plaintiff claims, prevented Defendants from having the benefit of information contained in his medical records maintained by the Union County Jail. CA 2:12-CV-915, *Doc. No. 1* at 3-4.

To the extent Plaintiff asserts these claims seeking to state a claim against QCHC based on the conduct of its employees, he is entitled to no relief. Plaintiff cannot state a claim for relief against a corporation based on the actions of its employees. Specifically, while a corporation providing prison medical services may be liable under § 1983 if it is established that the constitutional violation was the result of the corporation's policy or custom, such a corporation may not be held liable under § 1983 on the basis of *respondeat superior*. *See Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992); *Buckner v. Toro*, 116 F.3d 450 (11th Cir. 1986); *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978). Instead, a plaintiff must allege that the corporation has a policy, practice, or custom that represents official policy that resulted in the alleged discouragement, delay, or denial of medical treatment to inmates so as to deny a plaintiff his constitutional rights. *See Berdin v. Duggan*, 701 F.2d 909, 914 (11th Cir. 1983). A plaintiff must also specifically identify which policy or practice, if any, caused his injuries as a mere blanket assertion that a policy or practice existed is insufficient. *See Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999).

---

the interest of his health and safety. *See generally Hewitt v. Helms*, 459 U.S. 460, 467-68 (1983).

Plaintiff fails to allege that any specific policy or custom of QCHC contributed in any way to the claimed constitutional violations. Defendant QCHC is, therefore, due to be granted summary judgment.

*E. Deliberate Indifference*[5]

The law is settled that the government has an obligation under the Eighth Amendment to provide minimally adequate medical care for those in its custody. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Inmates must necessarily rely on prison authorities to meet their medical needs. *Id*. To demonstrate an Eighth Amendment violation, an inmate must demonstrate that he had a serious medical need to which a defendant acted with deliberate indifference. *Id*. at 104; *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Estelle*, 429 U.S. at 103-04) ("Because society does not expect that inmates will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment

---

[5]Defendants indicate that Plaintiff was a pretrial detainee at the county jail at the time the actions about which he complains occurred. *See Doc. No. 18*. The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon a pretrial detainee are violative of the Constitution. *Bell v. Wolfish*, 441 U.S. 520 (1979); *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause . . . ."). For analytical purposes, however, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985); *Cottrell*, 85 F3d at 1490 ("[T]he applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."). Thus, this court's reliance on cases interpreting the Eighth Amendment's prohibition against cruel and unusual punishment when addressing Plaintiff's medical treatment claims is appropriate regardless of his status at MCDF at the time the incident about which he complains occurred. *See Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

violation only if those needs are 'serious.'"). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002).   Deliberate indifference by a prison medical provider may manifest itself through their response to the prisoner's serious medical needs or by correctional personnel who intentionally deny, delay, and/or interfere with an inmate's ability to obtain necessary medical care and treatment. *Estelle*, 429 U.S. at 104-05.

It is not every claim by a prisoner that he has received inadequate medical care that amounts to an Eighth Amendment violation. Medical treatment of prisoners violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991) (quoting *Rogers v. Evans*, F.2d 1052, 1058 (11th Cir. 1986)).

Thus, when seeking relief based on deliberate indifference of prison medical personnel, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *Waldrop v.*

*Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Consequently, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).

"[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Thus, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris*, 941 F.2d at 1505 Neither negligent diagnosis or treatment of a medical condition, *McElligot*, 182 F.3d at 1254, nor differences of opinion between an inmate and medical personnel with regard to treatment or diagnosis supports an Eighth Amendment challenge. *Harris*, 941 F.2d at 1505; *Waldrop v. Evans*, 871 F.2d at 1033. Also, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and, therefore, not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle*, 429 U.S. at 107).

13

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S. Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324-25, 115 L. Ed. 2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  Thus, to survive summary judgment on his claim of deliberate indifference, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Defendants deny they acted with deliberate indifference to Plaintiff's medical needs. Rather, they maintain that they provided Plaintiff with all necessary and appropriate treatment and medication for his complaints. The specific treatment prescribed depended upon the observations and evaluations of Plaintiff's condition by the attending health care professional. *Doc. No. 18, Gurley and Johnson Affidavits; Doc. No. 56, Bates Affidavit.*

The evidence reflects that on admission to MCDF on January 21, 2012, jail staff administered an admission questionnaire to Plaintiff.  He indicated he was being treated for diabetes and high blood pressure and his current medications included Lisinopril (10 mg. daily) and Clonidine (.3 mg. twice daily).[6]  Plaintiff also indicated he had taken medicine for

---

[6]Both Clonidine and Lisinopril are medications which may be prescribed for the treatment of high blood pressure. *Available at http://webmd.com*.

Tuberculosis in 2000.  A chest x-ray taken January 24, 2012, reflected that Plaintiff tested negative for active tuberculosis.  *Doc. No. 18, Gurley Affidavit, Plaintiff's Medical Records*.

Medical personnel conducted Plaintiff's intake history and physical on January 22, 2012. He indicated a history of insulin dependent diabetes and high blood pressure (hypertension). The nurse listed his medications as Clonidine (.3 mg. daily) and Lisinopril (10 mg. twice daily), and noted "70/30 sliding scale."[7]  Plaintiff advised the nurse Lisinopril and Clonidine had been prescribed for him while he was in incarcerated in New Jersey. Dr. Bates' initial orders in light of Plaintiff's medical history included  blood pressure and blood sugar checks twice daily and a prescription for Clonidine .1 mg. twice a day for his hypertension. *Doc. No. 18, Gurley and Johnson Affidavits, Plaintiff's Medical Records*; *Doc. No. 56, Bates Affidavit*.

Medical personnel complied with Dr. Bates' orders to monitor Plaintiff's blood sugar and blood pressure. Blood pressure checks in January reflected an elevated reading on January 24, 2012, but Plaintiff's readings through the remainder of the month were stable. Plaintiff began refusing treatment in late January 2012.  Plaintiff's medical records reflect that attempts to monitor his blood sugar levels from January 23, 2012, through January 29, 2012, were made fourteen times.  Of those fourteen attempts, Plaintiff allowed medical personnel to check his blood sugar four times. From February 6, 2012, through February 29,

---

[7]The "70/30 sliding scale" notation is a reference to a type of  insulin therapy where insulin dose is based on blood sugar levels prior to a meal.  *Available at*  http://www.healthline.com.  *See also Doc. No. 18, Plaintiff's Medical Records - Glucose Monitoring*.

2012, medical personnel attempted to check Plaintiff's blood sugar levels a total of forty-seven times of which he refused these checks twenty-five times. Of the twenty-two times he agreed to a blood sugar check, he agreed to the administration of insulin therapy nine times. On February 6, 2012, physician orders directed medical personnel to check Plaintiff's blood pressure twice a week for seven days and then have him referred to the doctor.  Plaintiff had an elevated reading on February 11, 2012, and the other readings - when Plaintiff agreed to them during this time period - were stable. Beginning on January 23, 2012, Plaintiff  signed at least ten Treatment Refusal Forms for blood pressure and blood sugar checks.   On February 24, 2012, he submitted a hand-written letter to medical personnel wherein he stated he was refusing to take insulin and refused to be tested for blood sugar levels but indicated he wished to continue taking Clonidine (0.1 mg.) for his high blood pressure. *Doc. No. 18, Plaintiff's Medical Records*; *Doc. No. 56, Bates Affidavit*.

Plaintiff submitted five sick call slips, one of which was not related to a health issue, and one inmate request slip which was directed to the medical department.  The latter request sought medical records which Plaintiff complained had been taken by jail personnel.  A nurse responded on February 3, 2012, advising Plaintiff to address his concern with the jailer who took his property as the medical department did not have any medical records belonging to Plaintiff which had been given to them by correctional personnel.  On February 9, 2012, Plaintiff was seen in response to his sick call request for a vegetarian diet which he stated he had been on for the last twenty-seven years. Plaintiff was informed by medical staff that the

16

medical department would not be involved in special dietary requests for non-medical reasons. Plaintiff's sick call slip dated February 3, 2012, at 9:00 p.m. reflects that he complained of a pounding head and vision "going in and out." He indicated on the sick call request that he was diabetic and had hypertension. On examination medical personnel found Plaintiff was in no acute distress and noted his request that he be prescribed Lisinopril (10 mg.) and Clonidine (.2 mg.) which he stated he had been taking while incarcerated at the Union County Jail in New Jersey. Following evaluation by medical staff an appropriate assessment and treatment plan was followed by established protocol and appropriate clinical standards including regular blood pressure and blood sugar checks. Plaintiff submitted a sick call slip on February 11, 2012, wherein he requested a diabetic snack at night. He indicated he "take[s] insulin and need diabetic snack at night to insure that [his] sugar level does not drop dangerously low." Plaintiff was seen in the infirmary on February 12, 2012. Medical personnel noted the following:

> MD notified. I/M noncompliant [with] BS checks. Dr. Gurley states if I/M continues to be noncompliant, I/M will be placed in infirmary for observation. Denied request for diabetic snack. If I/M continues to be shaky and feel BS level drop then insulin dose will be adjusted.

> I/M responsibility to come to medical for BS checks twice daily at 0300 and 1500. If continues to refuse he will be placed in infirmary until compliant per Dr. Gurley.

*Doc. No. 18, Plaintiff's Medical Record*; *Doc. No. 56, Bates Affidavit*.

Defendants state that from the time of Plaintiff's admission until May 5, 2012, he refused blood sugar checks - glucose monitoring - well over 100 times and consistently

17

refused to allow his blood pressure to be checked. Plaintiff's unrefuted medical records reflect that he signed treatment refusal forms on at least ten to eleven separate occasions indicating his refusal of medical treatment, he refused to have blood drawn for labs on April 24, 2012, despite alleging that he suffered another stroke on April 18, 2012 (CA 12-255, *Doc. No. 10* at 2), and was counseled on numerous occasions regarding his non-compliance in taking Clonidine .1 mg. for his hypertension. Because of Plaintiff's diabetes and high blood pressure, his noncompliance behavior led MCDF physicians to order his placement in the infirmary on two separate occasions for close medical observation. Specifically, Plaintiff was moved to the infirmary on February 23, 2012, and returned to general population on February 26, 2012. He was again placed in the infirmary for observation on May 3, 2012, and returned to general population on May 10, 2012. No problems were noted during these observation periods. *Doc. No. 18, Gurley and Johnson Affidavits, Plaintiff's Medical Records*; *Doc. No. 56, Bates Affidavit*.

Defendants maintain that Plaintiff's medical records fail to indicate he had stroke during his incarceration at MCDF. Had Plaintiff not repeatedly refused treatment and had he allowed medical personnel to evaluate him at the chronic care clinics, the evaluation may have revealed whether he had in fact had a stroke and whether additional procedures such as a CAT Scan or MRI were indicated. Despite the times when Plaintiff's blood pressure was elevated, Dr. Bates affirms it was not to a level that would have caused suspicion of a cerebrovascular incident. Defendants further state Plaintiff voiced no complaints or concerns

about having suffered a stroke via either sick call requests or during medical evaluations. *Doc. No. 18, Gurley and Johnson Affidavits, Plaintiff's Medical Records*; *Doc .No. 56, Bates Affidavit*.

In relation to the claims presented by Plaintiff, the assertions made in his opposition to Defendants' summary judgment motions are self-serving, confused, unsupported, and even self-contradictory.  For instance,  Plaintiff disputes ever informing prison and/or medical staff at MCDF that he was taking insulin or being treated for diabetes and denies that he received insulin or was treated for diabetes while at MCDF. *Doc. No. 24* at 5. However, in his amended complaint (CA No. 12-255, Doc No. 5 at 7), Plaintiff claims that "[o]n January 21, 2012, . . . I told the jail staff that I was an insulin dependent diabetic" but goes on to allege in his consolidated complaint that Dr. Bates prescribed him insulin but he is not an insulin dependent diabetic.  *See* CA No. 12-915, Doc. No. 1 at 3.  Plaintiff asserts in his opposition that he suffered a stroke on February 2, 2012.  *See Doc. No. 24* at 4.  However, in his amended complaint Plaintiff claims to have suffered a mild stroke on February 18, 2012, and goes on to indicate that he notified the medical department of this incident on February 16, 2012 - two days before he alleges the incident happened.  *See* Civil Action No. 12-255 at 7-8.  In a subsequent amendment, Plaintiff references the date he had the stroke*s* (now 2 of them) as having occurred on February 17, 2012.  *Id.* at *Doc. No. 10* at 2. Plaintiff disputes that Defendant Gurley or Defendant Johnson ever examined him, alleges a doctor did not examine him prior to medication being ordered or dispensed, and maintains that he

19

did not receive his blood pressure medication until February 21, 2012 - thirty-seven days after his last dose was given to him in a New Jersey prison prior to his extradition to Alabama. *Doc. No. 24* at 3, 4, 6.

Plaintiff's medical records, including his medication charts do not support the aforementioned contentions. Rather, Plaintiff's allegations reflect inconsistences regarding the true nature of his claims, which happen to be his own.  The contradictions in his pleading are reflective of his seeming confusion over or inability to appreciate his medical conditions and the treatment protocols he should follow in managing those conditions. That Plaintiff wanted a  different treatment modality or medication regimen does not establish deliberate indifference on the part of Defendants.  *See Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985).

The affidavits filed by Defendants address the claims made by Plaintiff alleging a lack of adequate medical treatment.  A careful review of the evidentiary materials filed in this case demonstrates that these affidavits are corroborated by the objective medical records compiled contemporaneously with treatment provided to Plaintiff relative to his claims of deliberate indifference. These evidentiary materials refute the self-serving, conclusory, and contradictory allegations set forth by Plaintiff.  *Doc. No. 18, Gurley and Johnson Affidavits, Plaintiff's Medical Records, Doc. No. 56, Bates Affidavit.*

Under the circumstances of this case, the court concludes that the course of treatment undertaken by Defendants in addressing Plaintiff's medical condition did not violate his

constitutional rights. These Defendants' course of treatment shows a good-faith effort by

them and other detention facility medical staff to address Plaintiff's medical needs despite

his numerous failures to comply with the medical care and treatment prescribed by medical

professionals based on his medical conditions.  Nothing before the court indicates that the

medical care Plaintiff received was  "so grossly incompetent, inadequate, or excessive as to

shock the conscience or to be intolerable to the fundamental fairness." *Harri*s, 941 F.2d at

1505. That Defendants did not prescribe the same course of treatment and medication as

Plaintiff received  during his incarceration in New Jersey or obtain his medical records from

this facility do not, as a matter of law, constitute deliberate indifference.  "[T]he essential test

is one of medical necessity and not one simply of desirability." *Woodall v. Foti*, 648 F.2d

268, 272 (5th Cir.1981) (citation omitted);  *Garvin v. Armstrong*, 236 F.3d 896,  898 (7th Cir.

2001) (difference of opinion regarding manner in which condition should be treated fails to

demonstrate a constitutional violation); *Adam*s, 61 F.3d at 1545-46 (an inmate's allegation

that prison physicians did not diligently pursue alternative means of treating condition did

not rise beyond negligence to the level of deliberate indifference); *Hamm*, 774 F.2d at 1575

(inmate's desire for some other form of medical treatment does not constitute deliberate

indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir.

1981) (simple divergence of opinions between medical personnel and inmate-patient do not

violate the Eighth Amendment).

　　　　Plaintiff's undisputed medical records show that he received treatment for his medical

conditions and had access to detention facility medical personnel during his confinement at MCDF. The evidence before the court does not support Plaintiff's claim that medication for his hypertension was delayed or denied or that the course of treatment prescribed for him by Defendants was grossly incompetent or inadequate.  It is likewise evident that Defendants rendered treatment to Plaintiff in accordance with their professional judgment. Plaintiff has not supported his vague, self-serving, and self-contradictory allegations with specific, plausible facts, tending to show deliberate indifference to his serious medical needs by any of the named defendants nor has he presented any evidence which indicates Defendants knew that the manner in which they provided treatment created a substantial risk to his health and that with this knowledge consciously disregarded such risk. *See Johnson*, 145 F.3d at 168. Because the record is devoid of evidence, significantly probative or otherwise, showing that Defendants acted with deliberate indifference to Plaintiff's medical needs, they are due to granted summary judgment on Plaintiff's Eighth Amendment claim. *Carter*, 352 F.3d at 1350.

*F. Medical Co-Pay Claim*

Plaintiff complains that he was charged $10.00 for a nurse visit on February 16, 2012, during which time he notified the medical department that he suffered a stroke. CA No. 2:12-CV-255, *Doc. No. 5* at 7. To the extent Plaintiff challenges the imposition of a fee for medical services, such claim entitles him to no relief.

Requiring inmates who have adequate resources to pay for a small portion of their

medical care does not necessarily result in an intolerable, arbitrary, or burdensome procedure which amounts to a violation of the Eighth Amendment. *See Johnson v. Dep't of Pub. Safety & Corr. Servs.*, 885 F. Supp. 817, 820 (D. Md. 1995). Plaintiff does not allege that he was refused necessary medical treatment because he lacked sufficient funds, or that his health was endangered by the imposition of a fee for a proposed medical service. The allegation contained in Plaintiff's complaint simply reflects his belief that he is entitled to the benefit of cost-free maintenance.

As previously explained, the law is clear that if an inmate is unable to pay for necessary medical care, he must be maintained at state expense. *Estelle*, 429 U.S. 97. It is equally clear, however, that charging an inmate a nominal fee for medical and/or dental services programs is not a condition which requires inmates to bear unconstitutional conditions, but rather, forces them to make responsible resource allocation decisions. *See Martin v. DeBruyn*, 880 F. Supp. 610, 614 (N.D. Ind. 1995). Defendants are due to be granted summary judgment on this claim.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motions for summary judgment (*Doc. Nos. 18, 56*) be GRANTED;

2. Judgment be ENTERED in favor of Defendants;

3. This case be DISMISSED with prejudice;

4. Costs be taxed against Plaintiff.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **March 16, 2015**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 2nd day of March, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE